

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## NUMBERS 13-10-00449-CV & 13-10-00450-CV

**RENE RAMIREZ, HIDALGO COUNTY JUDGE,
AND YVONNE RAMON, ELECTIONS ADMINISTRATOR,**  **Appellants,**

**v.**

**JOEL QUINTANILLA AND
THE HIDALGO COUNTY REPUBLICAN PARTY,**  **Appellees.**

---

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

---

## NUMBER 13-10-00454-CV

## IN RE:  JOEL QUINTANILLA

---

### On Petition for Writ of Mandamus.

---

# O P I N I O N

**Before Justices Rodriguez, Benavides, and Vela**
**Opinion by Justice Benavides**

Through two interlocutory appeals, Hidalgo County Judge Rene Ramirez and Elections Administrator Yvonne Ramon seek to overturn orders denying their plea to the jurisdiction and granting a temporary injunction in favor of appellees, Joel Quintanilla and the Hidalgo County Republican Party. By petition for writ of mandamus, Quintanilla seeks to compel Ramirez to order a general election and to place Quintanilla's name on the ballot in that election for the office of Hidalgo County Commissioner Precinct One. Because the issues in each of these three related proceedings center around the appropriate procedure to elect a county commissioner to a vacancy when the office was not on the primary ballot, we dispose of all three cases in this opinion. We affirm the orders of the trial court denying the plea to the jurisdiction and granting the temporary injunction, and we dismiss the original proceeding as moot.

## I. BACKGROUND

On March 9, 2010, Sylvia Handy, the elected County Commissioner for Precinct One of the Hidalgo County Commissioners' Court, resigned from her position after pleading guilty to federal criminal charges. The term of office for her vacant seat expires on December 31, 2012. Shortly after accepting her resignation, Ramirez appointed A.C. Cuellar to the position.

On May 20, 2010, the Hidalgo County Democratic District Executive Committee selected Quintanilla as the nominee for Handy's unexpired term and certified his name to appear on the November general election ballot. However, on August 3, 2010, Ramirez, on behalf of the Hidalgo County Commissioners' Court, ordered a "special election" for the

first Tuesday in November to fill Handy's vacancy.

On August 9, 2010, Quintanilla filed his first amended original petition seeking injunctive and declaratory relief against Ramirez and Ramon. Ramirez and Ramon filed a plea to the jurisdiction, which the trial court denied on August 9, 2010. On August 9, 10, and 11, 2010, the trial court held evidentiary hearings on the matter. On August 12, 2010, the trial court granted the injunction. The parties have entered the following "Stipulations of Fact":

1. On March 2, 2010, the State of Texas and Hidalgo County held the statutory mandated primary elections with their duly qualified run-off contests.

2. The Office of Hidalgo County Commissioner Precinct One (1) was not on any primary ballot of any qualified political party conducting an election.

3. Mrs. Sylvia Handy was elected Hidalgo County Commissioner Precinct One (1) in the general election of November 2008, and said office is next statutorily mandated for election in the election cycle of 2010 (both primary and general elections). Sylvia Handy's County Commissioner Precinct One (1) seat expires on December 31, 2012.

4. After Mrs. Sylvia Handy pled guilty in the United States District Court for the Southern District in Texas, McAllen Division, the said Mrs. Handy resigned as Hidalgo County Commissioner Precinct One (1) on March 9, 2010. Judge Rene Ramirez accepted Sylvia Handy's resignation on March 12, 2010.

5. That Hidalgo County Judge Rene Ramirez appointed Mr. A.C. Cuellar as the Commissioner for Precinct One (1) on March 16, 2010 to fill the vacancy created by Sylvia Handy's resignation until the next general election as per Section 87.042 of the Texas Local Government Code.

6. Hidalgo County Democratic Party convened a meeting of the Precinct One (1) party executive committee, comprised of duly elected precinct chairs, which nominated Plaintiff Joel Quintanilla as the party nominee for Commissioner of Precinct One (1) on May 20, 2010. Said procedure was advised by the Secretary of State of Texas by email

3

to Ms. Dolly Elizondo, Hidalgo County Democratic Party Chairman.

7.    On August 3, 2010, Defendant Rene Ramirez, Hidalgo County Judge ordered and called a special election to be voted alongside the November 2, 2010 general election for Hidalgo County Commissioner Precinct One (1).

8.    The 74th day before the November 2, 2010 General Election is August 20, 2010.  The deadline for submitting a person's candidacy as an independent candidate for Hidalgo County Commissioner Precinct One (1) in the November 2, 2010 general election was May 13, 2010.

9.    On August 3, 2010 Hidalgo County Judge Rene Ramirez ordered Ms. Yvonne Ramon, Hidalgo County Elections Administrator, Defendant herein, to make the appropriate arrangements to conduct both elections.

The trial court's August 12, 2010, order granting the injunction states the following, in relevant part:

After considering Plaintiff Joel Quintanilla's application for temporary injunction order, the pleadings, the affidavits, evidence and arguments of counsel, the court finds that Plaintiff will probably prevail on the merits at trial of this cause and that Plaintiff will probably prevail at trial in establishing each and all of the following:

a.    That Defendant RENE RAMIREZ, Hidalgo County Judge, does not have the authority to order . . . a special election for the position of Hidalgo County Commissioner, Precinct 1 be held on November 2, 2010 allowing any duly qualified resident of Hidalgo County, Texas to place his or her name on the ballot, even though said person has not been qualified as a candidate pursuant to Chapter 202 of the Texas Election Code or Chapter 146 of the Texas Election Code.

b.    That Defendant YVONNE RAMON, Hidalgo County Elections Administrator, does not have the authority to conduct the election for the position of Hidalgo County Commissioner, Precinct 1 where such election would be held as a special election on November 2, 2010 allowing any duly qualified resident of Hidalgo County, Texas to place his or her name on the ballot, even though said person has not been qualified as a candidate pursuant to Chapter 202 of the Texas Election Code or Chapter 146 of the Texas Election Code.

4

c.      That Defendant YVONNE RAMON, Hidalgo County Elections Administrator, does not have the authority to place upon the ballot for the position of Hidalgo County Commissioner, Precinct 1, the names of anyone other than the names of the candidates duly and legally nominated by the four recognized political parties in the State of Texas under Chapter 202 of the Texas Election Code to the position of Hidalgo County Commissioner, Precinct 1 and who have duly notified Defendant YVONNE RAMON of said election of a nominee for their respective party, except that voters may write in the name of . . . another candidate if said individual has qualified as a write-in candidate pursuant to Chapter 146 of the Texas Elections Code.

d.      That pursuant to Chapter 202 and Section 3.004[1] of the Texas Election Code Defendant RENE RAMIREZ, Hidalgo County Judge, is required to order a general election November 2, 2010 for the position of Hidalgo County Commissioner Precinct 1.

The Court further finds that harm to Plaintiff is imminent, and if the court does not issue the temporary restraining order, Plaintiff will be irreparably injured because:  Defendants have ordered a special election to take place on November 2, 2010, which is contrary to the Texas Election Code; [t]here is no basis in law for Defendant Rene A. Ramirez to have ordered a special election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct 1; persons who are not authorized by Texas law are currently being allowed to submit their candidacy for Hidalgo County Commissioner, Precinct 1; [d]efendant Rene A. Ramirez is required to order a general election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct 1 pursuant to Texas Election Code Chapter 202 and Section 3.004; and Plaintiff's rights to run in a general election on November 2, 1010 for the position of Hidalgo County Commissioner Precinct 1 are being prejudiced by Defendants' actions and omissions since Defendant Rene A. Ramirez has not ordered a general election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct 1 pursuant to Texas Election Code Chapter 202 and Section 3.004 and has ordered a special election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct 1.  The Court finds that the deadline for submitting a person's candidacy as an independent candidate for Hidalgo County Commissioner, Precinct 1 in the November 2, 2010 general election was on May 13, 2010 pursuant to Texas Election Code Section 202.007.

Without a temporary injunction order, Plaintiff Joel Quintanilla's rights will be immediately and irreparably harmed since:  holding a special election on November 2, 2010 for Hidalgo County Commissioner, Precinct 1 would

---

[1] Section 3.004 of the Texas Election Code authorizes various entities to order elections.  *See* TEX. ELEC. CODE ANN. § 3.004 (Vernon 2010).  Section 3.004(a)(1) authorizes the county judge to order an election for "the general election for officers of the county government."  *See id.* § 3.004(a)(1).

be against the law, Defendant Rene A. Ramirez has failed to order a general election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct 1 pursuant to Texas Election Code Section 3.004[,] and Joel Quintanilla would be forced to compete against candidates who are not entitled to be named upon the ballot for the November 2, 1010 general election. The Court further finds that Plaintiff Joel Quintanilla's rights would be immediately and irreparably harmed since if a special election were held, the result of said election would be declared null and void preventing anyone, including Plaintiff Joel Quintanilla[,] from filling said vacancy[,] except A.C. Cuellar. The Court finds that Plaintiff has no adequate remedy at law. The court finds that the injury and harm to Plaintiff Joel Quintanilla[,] absent this temporary injunction order, will be immediate and irreparable.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant Rene Ramirez in his official capacity as the Hidalgo County Judge, and Yvonne Ramon in her official capacity as Hidalgo County Elections Administrator are hereby prohibited from:

(1) allowing persons who have not complied with the requirements of Chapter 202 of the Texas Election Code from entering their candidacy for the position of Hidalgo County Commissioner, Precinct 1;

(2) holding or conducting a special election on November 2, 2010 for the position of Hidalgo County Commissioner, Precinct 1 in violation of the Texas Elections Code; and

(3) not including Hidalgo County Commissioner Precinct One (1) on the ballot in the general election to be held on November 2, 2010.

IT IS FURTHER ORDERED that Defendant Rene Ramirez in his official capacity as Hidalgo County Judge, and Yvonne Ramon in her official capacity as Hidalgo County Elections Administrator do all things necessary to comply with the prohibitions set out in this temporary injunction order.

In connection with this order, the trial court also issued extensive findings of fact, some of which are co-extensive with the stipulated facts submitted by the parties. The findings of fact include, in pertinent part, the following additional matters:

During November 2009, Hidalgo County Judge J.D. Salinas accepted a position with the Federal Government and therefore resigned from office as Hidalgo County Judge. Rene Ramirez was appointed by a majority of [the] Commissioners' Court to fill the vacancy left by the departure of J.D. Salinas

6

from County Government. This appointment is for the unexpired term, which ends December 31, 2010.

. . . .

On May 20, 2010, the Hidalgo County Democratic Party lead by Party Chairperson Dolly Elizondo, convened a meeting of the Democratic Precinct Chairs for Commissioners Precinct One of Hidalgo County. Said meeting was for the specific purpose of nominating a candidate to be on the ballot as Democratic Party Nominee for the November 2010 General Election. The meeting was set and convened in accordance with the rules set out in the Election Code of the State of Texas. The procedure for this meeting was obtained from the Secretary of State. A majority of the duly elected precinct Chairs nominated the Plaintiff, Joel Quintanilla as the Party nominee for Commissioner of Precinct One.

There have not been any allegations or evidence that the procedure utilized by the Democratic Party Chairperson, Dolly Elizondo, were improper, illegal, or tainted in any manner. Further there is no allegation or evidence that the [advice] of the Secretary of State was not followed as per the election laws of the State of Texas. The Court finds therefore, that the process of nomination utilized by the Democratic Party of Hidalgo County for placement of a candidate for Commissioner of Precinct One of Hidalgo County was open to all residents of Precinct One. Further, that the process utilized was [done] in conformity with State Law.

On Thursday[,] July 29, 2010, Hidalgo County Elections Administrator, Yvonne Ramon already knew that Criminal District Attorney, Rene Guerra was requesting a Special Election to fill the vacancy for Precinct One Commissioner, notwithstanding the fact that the Democratic Party Executive Committee already had a Candidate for the November General Election. Mrs. Ramon contacted the Secretary of State to express concerns that she had with respect to Mr. Guerra's pending request before [the] Commissioners' Court. Specifically, the request concerned the legality of holding a Special Election in these circumstances. The Secretary of State responded emphatically that such an election would be illegal[.]

On August 3, 2010, against the [advice] of Counsel Steve Crain with the Law Firm of Atlas and Hall of McAllen Texas and contrary to the opinion of the Secretary of State, County Judge Rene Ramirez ordered a Special Election to fill the vacancy for Commissioner for Precinct One of Hidalgo County. Judge Ramirez did this with [the advice] of District Attorney Rene Guerra[,] who ousted attorney Steve Crain as Counsel for the County with respect to these proceedings. Mrs. Yvonne Ramon was given the order to proceed with

7

the special election notwithstanding that Secretary of State Hope Andrade had already advised Mrs. Ramon that such action would be illegal.

On August 4, 2010[,] Criminal District Attorney Rene Guerra wrote a letter to Mrs. Yvonne Ramon, Elections Administrator for Hidalgo County. Mr. Guerra reminds Mrs. Ramon that a Special Election has been called and that the County Judge had made careful consideration of all interested parties, though Mr. Guerra does not specify whom they might be. Mr. Guerra advises Mrs. Ramon that neither he nor Mrs. Ramon have ever experienced this before as it has never been done and "it has to raise doubts and concerns in your [mind] as to how to proceed" . . . . Mr. Guerra goes on to state the following in his letter. "If you proceed under the Judge's directives and my opinion, you are clear of any criticism should we make a mistake. I know that the Secretary of State gives you a lot of guidance; I really appreciate this, because it reduces my load. On our special situation, I need for you to follow my advice once I have reduced it to writing. Please do not ask for Mr. Crain to also give you direction, because he is not authorized to do so, when it involves election law matters. He cannot give you an opinion."

On August 4, 2010[,] Mrs. Ramon corresponded with Mr. Rene Guerra with reference to the Order to hold a Special Election that she had received from County Judge Rene Ramirez. Mrs. Ramon had a total of 10 questions, which she posed to Mr. Guerra as to how to proceed with the Special Election so ordered at his request . . . . They all express concerns about complexities and legalities of the Special Election.

On August 5, 2010, Criminal District Attorney Rene Guerra wrote a letter to Mrs. Ramon, Elections Administrator . . . . Mr. Rene Guerra states that he believes that the Order for the Special Election now voids the actions of the Democratic Party Executive Committee. Mrs. Ramon's remaining questions go essentially unanswered. Mr. Guerra does tell Mrs. Ramon to follow his advice and the Order issued by County Judge Rene Ramirez to hold a special election.

On August 5, 2010, Secretary of State Hope Andrade forwarded an opinion to the Attorney General of the State of Texas. The opinion on the Special Election issue was requested by the Attorney General to assist in the preparation of his opinion as requested by State Representative Aaron Pena, Vice Chairman of the House Election's Committee. Secretary Andrade states in pertinent part, "the unexpired term of office for the Hidalgo County Commissioner's Court seat at issue must appear on the November general election ballot in accordance with the appropriate provisions of the Code (found in Chapter 202 of Code). Any other process is contrary to state law and will result in unwarranted complexities."

The "unwarranted complexities" that Secretary of State Hope Andrade predicted have come to life in the form of this lawsuit for Injunctive Relief and Declaratory Judgment filed in the 93rd District Court of the State of Texas.

On August 12, 2010, Ramirez and Ramon filed accelerated appeals of the trial court's August 9, 2010 order denying their plea to the jurisdiction in appellate cause number 13-10-00449-CV and the trial court's August 12, 2010 order granting the application for temporary injunction in appellate cause number 13-10-00450-CV. That same day, appellants filed a "Motion for the Court to Sit En Banc" and a "Motion for Emergency Oral Argument" in these causes and a "Motion to Stay Temporary Injunction" in appellate cause number 13-10-00450-CV.

On August 13, 2010, the Court denied the "Motion for the Court to Sit En Banc" by per curiam order of the en banc court, with Justice Linda Reyna Yañez not participating. By separate order, the Court denied the "Motion for Emergency Oral Argument," ordered the "Motion to Stay Temporary Injunction" to be carried with the case, and directed appellees, Joel Quintanilla and the Hidalgo County Republican Party, to file their response, if any, to the "Motion to Stay Temporary Injunction," by Tuesday, August 17, 2010. The Court further ordered appellate causes 13-10-00449-CV and 13-10-00450-CV to be consolidated and considered together. Given the exigent nature of this case, the Court shortened relevant appellate time periods under the authority of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 2, 39.9; *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 891 (Tex. App.–Corpus Christi 2007, pet. denied). The Court ordered these matters to be submitted on the original papers forwarded by the trial court or on sworn and uncontroverted copies of those papers, together with any reporter's record deemed necessary by the parties. *See* TEX. R. APP. P. 28.1(e). The Court further

9

notified the parties that it would allow these appeals to be submitted to the Court with or without briefs.

Also on August 13, 2010, Quintanilla filed a petition for writ of mandamus in appellate cause number 13-10-00454-CV seeking, inter alia, to compel Ramirez to order a general election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct One, and to include Quintanilla's name on that ballot as the Democratic Party's nominee, and alternatively, to compel Ramirez to vacate the order for the special election. Quintanilla also filed: (1) an "Unopposed Motion for Consolidation" seeking to consolidate cause numbers 13-10-00449-CV, 13-10-450-CV, and 13-10-00454-CV on grounds that the parties, facts, and legal issues are substantially the same in these three proceedings, and (2) an "Unopposed Motion to Accelerate and Give Precedence to Relator's Application for Writ of Mandamus." The Court requested the real parties in interest, appellants herein, to file a response to the petition for writ of mandamus by August 17, 2010. The Court, having reviewed and fully considered the foregoing unopposed motions, GRANTS the motion for consolidation and motion to accelerate.

On August 16, 2010, appellee, the Hidalgo County Republican Party, notified the Court that it would not be filing a brief in this matter.

On August 17, 2010, appellants filed their brief and a response to the petition for writ of mandamus. That same day, appellee, Quintanilla, filed his "Response to Appellant's Motion to Stay Temporary Injunction." Quintanilla further filed a notice indicating that his "Response to Appellants' Motion to Stay Temporary Injunction" and his petition for writ of mandamus would serve as his appellate brief in the consolidated proceedings. The parties have further filed a clerk's record, a supplemental clerk's record, a reporter's record, and

10

a supplemental reporter's record.

## II. PLEA TO THE JURISDICTION

Appellants challenge the trial court's denial of their plea to the jurisdiction in appellate cause number 13-10-449-CV. A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the asserted claims have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. *Id.*; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.–Fort Worth 2003, pet. denied). We assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Miranda*, 133 S.W.3d at 227 (citing *Blue*, 34 S.W.3d at 555). If a plea to the jurisdiction challenges jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Blue*, 34 S.W.3d at 555. If that evidence creates a fact issue as to jurisdiction, then it is for the fact-finder to decide. *Kirwan*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction

11

as a matter of law." *Miranda*, 133 S.W.3d at 228.

After the defendant "asserts and supports with evidence that the trial court lacks subject[-]matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject[-]matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* This standard "generally mirrors" that of a traditional motion for summary judgment. *Id.* When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the non-movant. *Id.*; *see County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We do not "weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *Brown*, 80 S.W.3d at 555.

A plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its pleading if the pleading affirmatively negates the existence of jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Cameron County v. Ortega*, 291 S.W.3d 495, 497 (Tex. App.–Corpus Christi 2009, no pet.). However, if the plaintiff's pleadings are insufficient to demonstrate jurisdiction but do not show incurable defects in jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before dismissal. *Brown*, 80 S.W.3d at 555; *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.–Corpus Christi 2004, no pet.).

Appellants contend that the trial court lacked jurisdiction to enter a temporary injunction preventing the special election. According to appellants, it is well-settled law in Texas that courts are "without jurisdiction to enjoin the holding of elections." Appellants

further argue that "there are very limited circumstances wherein the Texas Supreme Court has approved the remedy of injunctive relief to enjoin an election" and contend that appellees did not seek relief under one of these "narrow exceptions."

We agree with appellants that the separation of powers doctrine and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process. *See Blum v. Lanier*, 997 S.W.2d 259, 263-64 (Tex. 1999) (citing *City of Austin v. Thompson*, 147 Tex. 639, 219 S.W.2d 57, 59 (Tex. 1949) (holding that the district court is without authority to enjoin even a void election); *Ex parte Barrett*, 120 Tex. 311, 37 S.W.2d 741, 742 (Tex. 1931) (stating that an injunction against holding an election is outside the general scope of judicial power); *City of Dallas v. Dallas Consol. Elec. St. Ry. Co.*, 105 Tex. 337, 148 S.W. 292, 295 (Tex. 1912) (declining to enjoin canvassing of votes on ground that an election was illegal); *Leslie v. Griffin*, 25 S.W.2d 820, 821-22 (Tex. Comm'n App. 1930, judgm't adopted) (same); *Winder v. King*, 1 S.W.2d 587, 587-88 (Tex. Comm'n App. 1928, judgm't adopted) (refusing to enjoin official from calling election); *City of McAllen v. Garza*, 869 S.W.2d 558, 561 (Tex. App.–Corpus Christi 1993, writ denied) (refusing to enjoin allegedly void election); *Kolsti v. Guest*, 565 S.W.2d 556, 557 (Tex. Civ. App.–Austin 1978, no writ) (declining to enjoin an official from placing a referendum on the ballot); *Ellis v. Vanderslice*, 486 S.W.2d 155, 159-60 (Tex. Civ. App.–Dallas 1972, no writ) (declining to enjoin an official from certifying a petition for a local option election); *Stroud v. Stiff*, 465 S.W.2d 407, 408 (Tex. Civ. App.–Amarillo 1971, no writ) (refusing to enjoin a city from proceeding under an election resolution)). As long recognized by the Texas Supreme Court, the judiciary has no power to control the electoral process or matters referable to the internal issues of political parties:

13

> Except to the extent that jurisdiction is conferred by statute or that the subject has been regulated by statute, the courts have no power to interfere with the judgments of the constituted authorities of established political parties in matters involving party government and discipline, to determine disputes within a political party as to the regularity of the election of its executive officers, or their removal, or to determine contests for the position of party committeemen or convention delegates.

*Wall v. Currie*, 147 Tex. 127, 129, 213 S.W.2d 816, 817 (1948) (citing 29 C.J.S. ELECTIONS § 88); *see Dick v. Kazen*, 156 Tex. 122, 126, 292 S.W.2d 913, 916 (1956) ("The holding of elections and the election procedure is a part of the political power of the State, and except as provided by statute, the judiciary has no control over them."); *see also In re Cahill*, 267 S.W.3d 104, 106 (Tex. App.–Corpus Christi 2008, orig. proceeding); *Runyon v. Kent*, 239 S.W.2d 909, 910 (Tex. Civ. App.–San Antonio 1951, writ ref'd).

Nevertheless, the Texas Election Code expressly provides for injunctive relief to prevent harm from violations of the election code: "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." *See* TEX. ELEC. CODE ANN. § 273.081 (Vernon 2010). Further, the Texas Supreme Court has held that "[a]n injunction that delays the election would be improper, but an injunction that facilitates the elective process may be appropriate." *Blum*, 997 S.W.2d at 263; *cf. Ellis*, 486 S.W.2d at 159-60 (explaining that courts may act to facilitate the election process, but injunctions typically interfere with that process). In short, if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot without delaying the election, then injunctive relief may provide a remedy that cannot be adequately obtained through an election contest. *Blum*, 997 S.W.2d at 264; *Ex parte Barrett*, 120 Tex. 311, 37 S.W.2d 741, 742 (1931); *see also Cahill v. Bertuzzi*, No. 13-09-00183-CV, 2010 Tex. App. LEXIS

14

3951, at *17-*18 (Tex. App.–Corpus Christi May 27, 2010, pet. filed) (mem. op.) (stating that section 273.081 of the election code gives the trial court jurisdiction to enjoin violations of the election code, but the relief requested must: (1) be timely to correct the alleged violations; (2) not seek to delay or cancel an election; (3) not interfere with the elective process; and (4) not inquire into or declare the validity of the election). Moreover, the Texas Supreme Court has recognized that a trial court may fashion equitable relief regarding violations of the election code, including the placement or removal of a candidate's name on the ballot. *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) ("As is evident, the Legislature has specifically called upon the courts to exercise their equitable powers to resolve election code violations.").

We conclude, under the foregoing authorities, that the trial court did not err in exercising jurisdiction over the instant dispute. Quintanilla sought relief by temporary injunction in a timely manner to correct the alleged violations of the Texas Election Code, and the relief he sought did not seek to delay an election. The instant case does not fall within the parameters of those cases that disallow courts from enjoining elections: while the injunction enjoins the special election, it mandates a general election in its stead, and thus allows the electoral process to proceed. In short, the injunction facilitates and does not impede or otherwise obviate the electoral process. *See id.* Accordingly, we conclude that the trial court properly denied appellants' plea to the jurisdiction. We affirm the August 9, 2010 order of the trial court denying the plea to the jurisdiction.

## III. TEMPORARY INJUNCTION

Ramirez and Ramon also appeal the trial court's order granting the temporary injunction in appellate cause number 13-10-00-450-CV. A trial court has broad discretion

15

in deciding whether to grant or deny a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Appellate review is strictly limited to evaluating whether there has been a clear abuse of discretion. *See id.* We review the evidence in the light most favorable to the order and indulge all reasonable inferences in favor of the decision. *City of McAllen*, 221 S.W.3d at 893. A trial court does not abuse its discretion if it bases its decision on conflicting evidence where evidence in the record reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).

To establish a right to a temporary injunction, an applicant must show: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury for which there is no adequate remedy at law. *Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.–Dallas 2003, pet. denied). A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex. App.–Amarillo 1995, no writ). An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Huff*, 188 S.W.3d at 218.

The purpose of a temporary injunction is to preserve the status quo until a trial on the merits. *Id.*; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). The status quo is the "last, actual, peaceable, noncontested status which preceded the pending controversy." *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.–Austin 2000, no pet.). In an appeal from an order granting or denying a request for a temporary

16

injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *Id.*; *see Transp. Co. v. Robertson Transps., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553-54 (1953)). We are directed to balance the competing equities in determining whether injunctive relief to resolve an election code violation is appropriate. *See In re Gamble*, 71 S.W.2d at 317.

The issues raised in these proceedings involve statutory construction, which is subject to de novo review. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the statute's language. *Id.* Where the statutory text is clear, it is determinative of the Legislature's intent, and we give meaning to the language consistent with other provisions in the statute. *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). Our practice when construing a statute is to recognize that "the words [the Legislature] chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). Accordingly, we construe the statutory text according to its plain and common meaning unless a contrary intention is apparent, or unless such a construction leads to absurd results. *City of Rockwall*, 246 S.W.3d at 625-26. We also presume that the Legislature intended a just and reasonable result by enacting the statute, and so construe the statute in a manner consistent with that presumption. *Presidio Indep. Sch. Dist.*, 309 S.W.3d at 930; *see* TEX. GOV'T CODE ANN. § 311.021(3)) (Vernon 2005).

Appellants contend that the controlling authority for determining how to fill vacancies by resignation is contained within chapter 201 of the Texas Election Code. According to appellants, section 201.002, entitled "Authority to Act on Resignation or

Declination," provides the Hidalgo County Judge with the authority to order a special election to fill the vacancy in office caused by Commissioner Handy's resignation:

> Unless otherwise provided by law, the authority to act on a public officer's resignation or an officer-elect's declination is the officer or body authorized to make an appointment or order a special election to fill a vacancy in the office.

TEX. ELEC. CODE ANN. § 201.002 (Vernon 2010). Appellants further argue that they were required to hold a special election by section 201.051(b) of the Texas Election Code. *See id.* § 201.051(b) (Vernon 2010). This section, which is found in title 12, "Elections to Fill Vacancy in Office," and subchapter C, "Special Election to Fill Vacancy Generally," is titled "Time for Ordering Election," and provides:

> (a)    If a vacancy in offices is to be filled by special election, the election shall be ordered as soon as practicable after the vacancy occurs, subject to Subsection (b).

> (b)    For a vacancy to be filled by a special election to be held on the date of the general election for state and county officers, the election shall be ordered not later than the 70th day before election day.

*Id.*

In contrast, appellees contend that the procedure to fill the position is provided by chapter 202 of the election code, "Vacancy in Office of State or County Government," which "applies to elective offices of the state and county governments, except the offices of state senator and state representative." *Id.* § 202.001 (Vernon 2010). Section 202.002 of the code, entitled, "Vacancy Filled at General Election," provides:

> (a)    If a vacancy occurs on or before the 74th day before the general election for state and county officers held in the next-to-last even-numbered year of a term of office, the remainder of the unexpired term shall be filled at the next general election for state and county officers, as provided by this chapter.

18

(b)     If a vacancy occurs after the 74th day before a general election day, an election for the unexpired term may not be held at that general election. The appointment to fill the vacancy continues until the next succeeding general election and until a successor has been elected and has qualified for the office.

*Id.* § 202.002 (Vernon 2010). Construing the statutory scheme governing elections and the plain language of the applicable statutes, we conclude that chapter 202, and not chapter 201, applies to the instant case.

Other provisions elsewhere in the statutory laws governing elections reiterate the directive that the vacancy of the position of a county commissioner is filled, following any necessary appointment, at a general election rather than a special election. Specifically, the election code's mandate that the position be filled at the next general election is bolstered by the local government code, which gave Ramirez the authority to appoint A.C. Cuellar "until the next general election." TEX. LOC. GOV'T CODE ANN. § 87.042 (Vernon 2008). Moreover, chapter three of the election code, which governs the ordering of elections, allows the "county judge" to order a "general election for officers of the county government." TEX. ELEC. CODE ANN. § 3.004(a)(1) (Vernon 2010).

Our conclusion is further supported by the analysis and conclusions contained in several opinions rendered by the Texas Attorney General. *See, e.g.,* TEX. ATTY. GEN. OP. No. DM-172 (1992) (requiring an election to be held in conformance with the statutory authorization for the election); TEX. ATTY. GEN. OP. No. MW-374 (1981) (stating that a county judge or commissioners' court is not authorized to call a special election to vote on a county commissioner position when the regular election was enjoined but the injunction was subsequently lifted); TEX. ATTY. GEN. OP. No. C-380 (1965) (concluding that the commissioners' court had no authority to call an election to abolish a hospital district); TEX.

19

ATTY. GEN. OP. No. 0-2965 (1965) (concluding that there is no authority for a commissioners' court to call a special election to fill a vacancy in the office of sheriff). Although the opinions of the Texas Attorney General are not controlling on the courts, such opinions may be considered as persuasive authority, and in this matter, we find these opinions persuasive. *See Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996); *see, e.g., HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 661 n.148 (Tex. 2007); *Comm'rs Court v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997); *see also Bass v. Aransas County Indep. Sch. Dist.*, 389 S.W.2d 165, 176 (Tex. Civ. App.–Corpus Christi 1965, writ ref'd n.r.e.) ("Opinions of the Attorney General are not binding upon the courts, and are not judicial precedents, but are persuasive and entitled to consideration.").

We further note that the record before us contains a letter opinion rendered by Texas Secretary of State, Hope Andrade, dated August 5, 2010, analyzing the specific facts and issues presented in this case. After a full and thorough consideration of the factual and legal background, Andrade concluded in her opinion that "[s]tate law provides mechanisms for filling a county commissioner's seat," which "do not include the use of a special election." The Secretary of State's opinion, like those of the Texas Attorney General, is not binding on our Court; however, it provides persuasive authority on the specific issues currently before us.

After reviewing the general statutory protocol governing elections and construing its plain language, we reject appellants' contention that the code is ambiguous. In the instant case, section 202.002(a) is applicable because Handy's resignation was accepted[2] on

---

[2] The resignation of a county commissioner becomes effective immediately upon acceptance. TEX. ELEC. CODE ANN. § 201.023 (Vernon 2010) (providing that a vacancy occurs on the date the resignation is accepted by the appropriate authority or on the eighth day after the date of the resignation's receipt by the appropriate authority); *see* TEX. ATTY. GEN. OP. No. M-760 (1970); TEX. ATTY. GEN. OP. No. M-748 (1970).

March 12, 2010, which was prior to the seventy-fourth day before the general election to be held on November 2, 2012. Section 202.002(a) of the code provides that if a vacancy occurs in a state or county office "on or before the 74th day before the general election for state and county officers," in this case, August 20, 2010, then "the remainder of the unexpired term shall be filled at the next general election for state and county officers, as provided by this chapter." TEX. ELEC. CODE ANN. § 202.002(a).

Chapter 202 of the election code further specifies those persons eligible to run for the vacancy of the county commissioner in a general election. Depending on the timing of the vacancy, those candidates may include: persons who won primary elections as provided in section 202.004; persons nominated by convention as provided in section 202.005; persons nominated by executive committee as provided in section 202.006; persons qualifying as independent candidates as provided in section 202.007; or alternatively, persons qualifying as write-in candidates as provided in section 146.021. *See id.* §§ 146.021, 202.004, 202.006, 202.007 (Vernon 2010).

Appellants contend, in short, that chapter 201 of the election code provides some authority for the county judge to call a special election and that there is no law that prohibits the county judge from calling a special election in these circumstances. Fundamentally, appellants misconstrue the applicable standard of review—rather than looking for a law which prohibits the county judge from calling a special election to fill the commissioner's vacant position, we must look for a law authorizing such an election. *See City of McAllen*, 221 S.W.3d at 893. There can be no valid election without some lawful authority supporting it because "the right to hold an election cannot exist or be lawfully exercised without express grant of power by the Constitution or Legislature." *Countz v. Mitchell*, 120

21

Tex. 324, 333 (Tex. 1931); *see Setliff v. Gorrell*, 466 S.W.2d 74, 77 (Tex. Civ. App.–Amarillo 1971, no writ) (holding that the right to hold an election, rather than being inherent in the people, is dependent upon statutory authorization); *Smith v. Morton Indep. Sch. Dist.*, 85 S.W.2d 853, 857 (Tex. Civ. App.–Amarillo 1935, writ dism'd w.o.j.) (holding that an election held without affirmative statutory authority is a nullity). In *Countz*, the Texas Supreme Court considered the validity of a special election called by a county judge and concluded that:

> The validity of the election in question can only be sustained upon the theory that the county judge has been vested by law with authority to order the same. We are unable to find any provision of law which authorizes the county judge to call the election described . . . and counsel for appellee have not cited us to any statute which attempts to confer such authority. The county judge has been authorized in various statutes to order special elections provided for, but there is no statute conferring general power upon the county judge to order special elections.

*See Countz*, 120 Tex. at 333. The supreme court thus concluded that the county judge lacked inherent authority to order a special election. *Id.*

The distinction between utilizing a special election, rather than the statutorily-mandated general election, is significant. Chapter 202 of the election code specifies those persons eligible to run for the vacancy of the county commissioner in a general election, and in contrast, the special election called by Ramirez is to be a "non-partisan" election open to "all candidates who file an application to be on the ballot." In the instant case, Handy's vacancy occurred after the primary elections were held. Accordingly, under section 202.006, the Hidalgo County Democratic Party convened a meeting of the Precinct One party executive committee, which was comprised of duly elected precinct chairs, and which nominated Quintanilla as the party nominee for Hidalgo County Commissioner,

22

Precinct One on May 20, 2010. As such, Quintanilla is entitled to a place on the ballot for the general election.

Quintanilla contends that Ramirez has violated the election code, specifically, those provisions in chapter 202 that require that a vacancy for the county commissioner's position be filled by general election. Quintanilla contends that the failure to call a general election, as required by code, and the substitution of a special election to fill the vacancy, causes him harm because he qualified for a position on the ballot in the general election, as specified by section 202.006 of the election code, and non-qualified candidates will be placed on the ballot if a special election is called. Based on the foregoing, we conclude that Quintanilla qualifies under the express language of section 273.081 of the election code as "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code." *See* TEX. ELEC. CODE ANN. § 273.081. Further, in balancing the equities presented, we conclude that the trial court did not abuse its discretion in granting injunctive relief. In this regard, we note that "[t]he public interest is best served when public offices are decided by fair and vigorous elections." *Francis*, 186 S.W.3d at 542. Accordingly, we affirm the trial court's order of August 12, 2010, granting the temporary injunction.

## IV. MANDAMUS

Quintanilla filed a petition for writ of mandamus regarding these issues in appellate cause number 13-10-00454-CV. Mandamus is an "extraordinary" remedy. *In re Sw. Bell Tel. Co.*, L.P., 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding); *see In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). In order to obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and that the

23

relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show that the trial court could "reasonably have reached only one decision." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (quoting *Walker*, 827 S.W.2d at 840).

Historically, mandamus was treated as an extraordinary writ that would issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker*, 827 S.W.2d at 840. Now, in some extraordinary cases, whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of the costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 462. "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. According to the Texas Supreme Court:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.* at 136.

24

Mandamus jurisdiction over this original proceeding is delineated by section 273.061 of the Texas Election Code:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer.

TEX. ELEC. CODE ANN. § 273.061 (Vernon 2010); *see, e.g., In re Torry*, 244 S.W.3d 849, 851 (Tex. 2008) (orig. proceeding) (per curiam). The election code further provides that "[t]he performance of a duty placed by this code on an officer of a political party is enforceable by writ of mandamus in the same manner as if the party officer were a public officer." TEX. ELEC. CODE ANN. § 161.009 (Vernon 2010); *In re Cahill*, 267 S.W.3d 104, 105 (Tex. App.–Corpus Christi 2008, orig. proceeding); *In re Dupont*, 142 S.W.3d 528, 531 (Tex. App.–Fort Worth 2004, orig. proceeding).

By petition for writ of mandamus, Quintanilla urges this Court to issue a writ of mandamus which: (1) compels Ramirez to order a general election on November 2, 2010 for the position of Hidalgo County Commissioner Precinct One; (2) compels Ramon to do all things necessary to conduct the general election; (3) prohibits persons who have not complied with the requirements of chapter 202 of the Texas Election Code from entering their candidacy for the position of Hidalgo County Commissioner Precinct One; (4) compels Ramirez and Ramon to place relator's name on the ballot in the general election for the office of Hidalgo County Commissioner Precinct One; and (5) compels Ramirez to vacate his order that a special election for the for the position be held on November 2 allowing any duly qualified resident of Hidalgo County, Texas to place his or her name on the ballot even though said person has not qualified as a candidate pursuant to either chapter 202 or

chapter 146 of the Texas Election Code.

Based on our actions in affirming the trial court's orders denying the plea to the jurisdiction and granting the temporary injunction, all relief sought in the petition for writ of mandamus has been granted. Accordingly, the petition for writ of mandamus is moot. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings. . . ."); *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (stating that, for a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought). Therefore, we dismiss the petition for writ of mandamus as moot.

## V. CONCLUSION

In summary and conclusion, we GRANT Quintanilla's "Unopposed Motion for Consolidation" and his "Unopposed Motion to Accelerate and Give Precedence to Relator's Application for Writ of Mandamus." We AFFIRM the trial court's order denying the plea to the jurisdiction in appellate cause number 13-10-00449-CV and, likewise, AFFIRM the trial court's order granting the temporary injunction in appellate cause number 13-10-00450-CV. Appellants' "Motion to Stay Temporary Injunction" filed in appellate cause number 13-10-00450-CV, previously carried with the case, is DENIED. The petition for writ of mandamus in appellate cause number 13-10-00454-CV is DISMISSED AS MOOT.

 

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
20th day of August, 2010.