

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

May 9, 2016

The Honorable J.D. Lambright
Montgomery County Attorney
501 North Thompson, Suite 300
Conroe, Texas 77301

Opinion No. KP-0084

Re: Questions related to an emergency services district's sales and use tax election that failed to exclude territory where the sales tax was already capped at two percent
(RQ-0070-KP)

Dear Mr. Lambright:

On behalf of the Montgomery County Emergency Services District #7 ("ESD #7"), you ask several questions about a recent sales tax election.[1] You explain that the Board of the Montgomery County Emergency Services District #11 ("ESD #11") called for an election on May 9, 2015, to consider the adoption of a local sales and use tax in the amount of one-half percent. *See* Request Letter at 1. You state that in accordance with Health and Safety Code subsection 775.0751(c-1), the election order excluded the cities of Splendora and Patton Village where the sales and use tax was already capped at two percent. *See id.* You tell us that ESD #11 failed to recognize that additional territory should have been excluded from the territory described in the election order due to the two percent sales and use tax rate cap. *See id.* at 1–2 (stating that the East Montgomery County Improvement District ("EMCID"), Economic Development Zone No. 4 ("EDZ #4"), was also located in ESD #11 territory and had a sales and use tax that, when combined with another improvement district, resulted in a two percent tax rate). Thus, the voters' passage of the ESD #11 tax proposition resulted in a small portion of territory that overlapped with EDZ #4 territory that, when combined, caused the tax rate to exceed the local two percent cap. *See id.*

You also explain that, concurrently with the sales tax election, the voters of ESD #7 and ESD #11 voted to consolidate the two districts with the consolidated district retaining the name of ESD #7. *See id.* at 2. You indicate that the new consolidated ESD #7 notified the Comptroller of the results of the tax election and was told that the Comptroller "would be unable to implement the sales tax increase for the entire territory because of the EDZ #4 local sales tax." *Id.* You state

---

[1]*See* Letter from Honorable J.D. Lambright, Montgomery Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1, 3 (Nov. 9, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

that the EMCID Board offered to pass a resolution supporting the tax increase and to take legal steps necessary to ensure application of the sales and use tax. *See id.* You tell us that the

> Comptroller's Office has expressed the opinion that no action by the EMCID board relating to the EDZ #4 sales tax, even if applied retroactively, would contradict the . . . Comptroller's opinion that the ESD #11 election included a territory that exceeded the statutorily capped 2% and therefore the sales and use tax cannot be instituted *anywhere* within the district.

*Id.* Finally, you inform us that the EDZ #4 "currently has no organizations or businesses within its boundaries that are registered, collecting, or submitting sales tax revenue." *Id.*

In this context you ask our opinion as to the following:

1) Absent any participation by the EMCID board to withdraw its right to local sales and use tax collections in the EDZ #4 that was capped at 2%, may the ESD #7 impose, and should the Texas Comptroller recognize, the additional 1/2% sales tax in all areas where the EDZ #4 sales tax does not overlap;

2) Are there any mechanisms that would permit the EMCID to retroactively withdraw its right to sales and use tax collections in the EDZ #4 ensuring no part of the district exceeds the 2% cap, thereby allowing the Texas Comptroller to recognize the new 1/2% sales tax; and

3) Since the EDZ #4 currently has no organizations or businesses within its boundaries that are registered, collecting, or submitting sales tax revenue to the Texas Comptroller, are there any other avenues statutorily available to retroactively exclude EDZ #4 from the election held May 9, 2015?

*Id.* at 3.

Health and Safety Code section 775.0751 governs an emergency services district's imposition of a sales and use tax. *See* TEX. HEALTH & SAFETY CODE § 775.0751(a)–(d). It authorizes an emergency services district to, after an election, "adopt a sales and use tax" at specified rates. *Id.* § 775.0751(a); *see id.* § 775.0751(b) (providing that chapter 323 of the Tax Code applies to the "application, collection, and administration of the tax imposed" under section 775.0751); *see also* TEX. TAX CODE §§ 323.001–.510. Section 775.0751 expressly precludes an emergency services district from adopting a tax or an increase of the tax rate "*if as a result* of the adoption of the tax or the tax increase the combined rate of all sales and use taxes imposed by the district and other political subdivisions of this state having territory in the district would exceed two percent *at any location in the district*." TEX. HEALTH & SAFETY CODE § 775.0751(c) (emphasis

added). The sole exception to the limitation in subsection 775.0751(c) is where, among other things, the board

> excludes from the election and the applicability of any proposed sales and use tax any territory in the district where the sales and use tax is then at two percent[.]

*Id.* § 775.0751(c-1)(1). Yet, you tell us that the territory in which the ESD #11 tax election was conducted included, albeit in error, territory that resulted in a combined sales and use tax rate in excess of the two percent statutory cap. Request Letter at 2; *see also* Request Letter, Exhibit A (attaching election order excluding only the City of Splendora and the City of Patton Village) (on file with the Op. Comm.); *see also* TEX. HEALTH & SAFETY CODE § 775.0751(c-1) (requiring exclusion of "any" territory where rate would exceed the cap). Once the election has been conducted, no mechanism exists in subsections 775.0751(c) or (c-1) to exclude the territory in which the rate is excessive.

Under Tax Code chapter 323, the Comptroller "shall administer, collect and enforce any tax imposed" under chapter 323. TEX. TAX CODE §§ 323.301 (granting authority over sales and use taxes imposed by a county), 323.101(f) (providing that chapter 323 governs the "application, collection, and administration of a sales and use tax imposed under Chapter . . . 775, Health and Safety Code"). This is likely a mandatory duty. *See* TEX. GOV'T CODE § 311.016(2) ("'Shall' imposes a duty."). Yet, nothing in chapter 323 or chapter 775 authorizes adjusting, retroactively or otherwise, the boundaries of a territory voting for a tax increase as set out in an entity's election order. *See generally City of McAllen v. Garza*, 869 S.W.2d 558, 560 (Tex. App.—Corpus Christi 1993, pet. denied) (recognizing that the "election process commences upon the adoption of an order calling an election"). And the Comptroller is without express authority in either chapter to selectively collect the sales and use tax. Thus, a court would likely conclude that the Comptroller is not authorized to recognize the tax increase in only the portion of the territory of the ESD #7 that does not overlap with the EDZ #4.

We are unaware of any statutory provision that would allow the EMCID to unilaterally and retroactively withdraw its right to collect sales and use tax in the EDZ #4. Subchapter D, chapter 3846, of the Special District and Local Laws Code governs the EMCID's imposition of a sales and use tax. *See* TEX. SPEC. DIST. CODE §§ 3846.151–.164; *see also id.* § 3846.154 (providing that Tax Code chapter 323 in most instances governs the application, collection, and administration of the tax). Section 3846.155 authorizes the adjustment of sales and use tax rates as between the EMCID and a municipality or political subdivision located in the EMCID's boundaries to ensure the tax rate does not exceed two percent, but the automatic adjustment of a rate is triggered only where the excessive combined rate is "a result of the imposition or increase in a sales and use tax by the [EMCID]." *Id.* § 3846.155(d). Given that express language, subsection 3846.155(d) cannot be construed to trigger a rate adjustment upon the increase in a sales and use tax by a political entity other than the EMCID. *See Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) (recognizing that courts look to a statute's plain language assuming that the Legislature knows how to say what it means). Similarly, section 3846.156 authorizes the EMCID to abolish the sales and use tax without an election by order of its board, but it does not authorize the EMCID to do so in only a portion of its territory. *See* TEX. SPEC. DIST. CODE § 3846.156(a) (stating that the "board

. . . may abolish *the* local sales and use tax rate" (emphasis added)); *see also id.* § 3846.156(b) (limiting authority to abolish the tax "while any district debt or contractual obligation remains outstanding if any sales and use tax revenue is pledged to secure payment of the outstanding debt or obligation"). Nor does section 3846.156 operate retroactively. *See* TEX. TAX CODE § 323.102 (providing for prospective effective dates for the imposition of sales and use taxes). The EMCID is also authorized to change its sales and use tax rate at an election under section 3846.152. *See* TEX. SPEC. DIST. CODE § 3846.152(a). Accordingly, the EMCID may unilaterally and prospectively abolish its sales and use tax rate throughout the entire district, or it may hold an election to put the question of the abolishment of the tax or the reduction of the tax rate to the voters. We find no statutory mechanism by which the EMCID may retroactively reduce its right to sales and use tax collections in only the EDZ #4 portion of its territory.

You do not provide specific information about the EDZ #4 sales and use tax, but we presume the rate was established by the voters in an election prior to the May 2015 election. *See id.* § 3846.264(a) (requiring election for the imposition of a sales and use tax in the development zone). Subchapter F of chapter 3846 governs economic development zones created by the EMCID. *See id.* §§ 3846.251–.265. The subchapter provides that an economic development zone created by the EMCID is a separate body with its own authority to impose a sales and use tax in its territory. *See id.* § 3846.252; *see id.* § 3846.264(a)–(g). Subsection 3846.264(f) provides that

> [i]f a political subdivision . . . *imposes* a sales and use tax in the development zone, the sales and use tax authorized by this section is reduced as of the date the development zone authorized the sales and use tax so that the combined total of all local sales and use taxes imposed in the development zone does not exceed two percent.

*Id.* § 3846.264(f) (emphasis added). The plain language provides for the automatic reduction of an economic development zone sales and use tax rate upon a political subdivision's "imposition" of a sales and use tax within the development zone territory. By its plain language, the provision applies to a political subdivision's initial *imposition* of a sales and use tax and not for subsequent tax rate increases. *See Leland*, 257 S.W.3d at 206; *cf.* TEX. SPEC. DIST. CODE § 3846.155(d) (authorizing rate adjustment in the event of an "imposition or increase" of another tax rate). As it was the ESD #11's tax increase that caused a rate that, when combined with the EDZ #4 rate, exceeds the statutory minimum, we cannot conclude that this provision operates to provide the EDZ #4 a mechanism by which to adjust the rate in its territory. And we find no other mechanism in subchapter F authorizing the EDZ #4 to exclude itself from the ESD #11 territory included within the 2015 election despite the fact that no organizations or businesses are collecting and submitting sales tax revenue to the Comptroller. *See generally* TEX. SPEC. DIST. CODE §§ 3846.251–.265. The EDZ #4 could hold a future election to put the question of the repeal of the sales and use tax to its voters. *See id.* § 3846.264(a).

## S U M M A R Y

No relevant statutory provision authorizes the Montgomery County Emergency Services District #7, the East Montgomery County Improvement District, or the Economic Development Zone #4 to retroactively exclude from the May 2015 election territory with a tax rate that, when combined with the increased tax rate from the election, exceeds the two percent statutory cap on sales and use tax rates. The Texas Comptroller is without authority to selectively collect the sales tax in only the territory in which the combined sales tax rate does not exceed the cap.

Any of the districts are authorized to conduct a future election to, upon approval of its voters, abolish the sales and use tax or change the rate of a sales and use tax.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee